Argued November 30, affirmed December 22, 1972

# WOODLAND PARK HOSPITAL, INC., *Petitioner,*
*v.* COMPREHENSIVE HEALTH PLANNING
AUTHORITY ET AL, *Respondents.*

504 P2d 753

*George E. Hart,* Pennsylvania, argued the cause for petitioner. On the brief was Donald H. Londer, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent Comprehensive Health Planning Authority. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Clifford B. Alterman,* Portland, argued the cause for respondent Portland Adventist Hospital. With him on the brief were Kell & Alterman, Christopher P. Thomas and Emerson U. Sims, Portland.

Before FOLEY, Presiding Judge, and FORT and THORNTON, Judges.

FOLEY, J.

Pursuant to the judicial review provided for by ORS 441.095 (2), this appeal challenges the issuance of a Certificate of Need to Portland Adventist Hospital by the Comprehensive Health Planning Authority, hereafter referred to as CHPA.

ORS 441.090 provides that a Certificate of Need from CHPA is required prior to construction, expansion, or alteration of a hospital. In the present case, Portland Adventist Hospital filed its application for a Certificate of Need on January 10, 1972. This application related to the relocation and building of an acute care general hospital to be located on Glendoveer Golf Course in east Multnomah County. The proposed

relocation was within the close proximity of Woodland Park Hospital, petitioner herein.

After extensive study the Comprehensive Health Planning Association for the Metropolitan Portland Area recommended to CHPA that the Certificate of Need be granted. Thereafter, a hearing was held before a hearings officer and a review committee. On July 11, 1972, the CHPA entered its order adopting the recommendation of the hearings officer that the Certificate of Need be granted.

Petitioner, an intervenor in the proceeding below, challenges the decision on two grounds. First, petitioner contends that CHPA erred in its interpretation of a statutory criterion for granting the Certificate of Need. The second ground is that the decision to grant the Certificate of Need is not supported by substantial evidence.

As to the first contention, ORS 441.095 (1) provides that CHPA

"* * * shall issue a certificate of need if it finds that the proposed construction is reasonably necessary to provide health care to the defined population in a manner which is economically practicable, which maintains high quality standards, which is appropriate to the timely and economic development of adequate and effective health services in the area. * * *"

That subsection then sets out 13 criteria which the CHPA shall take into consideration in making the determination of necessity.[1] Petitioner does not con-

---

[1] ORS 441.095 (1) provides that CHPA shall take into consideration:

"(a) Recommendations of the area-wide health planning authorities.

tend that these criteria were not taken into consideration by CHPA. Petitioner contends only that CHPA erred in its construction of the term "defined population," and that such misconstruction resulted in a misapplication of the statutory criteria.

■ ORS 441.095 (5) defines "defined population" as follows:

"'Defined population' as used in this section

"(b) The relationship of the proposal to the area-wide health plan.

"(c) The need for health care services in the area or the requirements of the defined population.

"(d) The availability and adequacy of health care services in facilities which are currently serving the defined population and which conform to state standards.

"(e) The need for special equipment and services in the area which are not reasonably and economically accessible to the defined population.

"(f) The need for research and educational facilities.

"(g) The probable economies and improvement in service that may be derived from the operation of joint central services or from joint, cooperative, or shared health resources which are accessible to the defined population.

"(h) The availability of sufficient manpower in the professional disciplines required to maintain the facility.

"(i) The plans for and development of comprehensive health services and facilities for the defined population to be served. Such services may be either direct or indirect through formal affiliation with other health programs in the area and shall include preventive diagnostic treatment and rehabilitation services.

"(j) Whether or not the applicant has obtained all relevant approvals, licenses or consents required by law for its incorporation or establishment.

"(k) The needs of members, subscribers and enrollees of institutions and health care plans which operate or support particular hospitals for the purpose of rendering health care to such members, subscribers and enrollees.

"(l) In the case of an application by a hospital established or operated by a religious body or denomination, the needs of the members of such religious body or denomination for care and treatment in accordance with their religious or ethical convictions may be considered to be public need.

"(m) The proposed facility will be adequately funded."

and ORS 441.090, means the population that is or may reasonably be expected to be served by an existing or proposed hospital. 'Defined population' shall also include persons who prefer to receive the services of a particular recognized school or theory of medical care. 'Defined population' shall not be limited to a geographical area."

The broad language of this provision allows CHPA, on a case-by-case basis, to determine those persons who use or are likely to use a particular hospital. The factors involved in that determination may vary with the circumstances, and it appears to have been the legislative intent that each case be decided on its own facts without resort to rigid criteria. The only limitation which the legislature imposed was that CHPA cannot determine the existence or nature of a defined population solely by reference to a geographical area.

In this case the evidence shows that the primary factor in choice of a hospital is physician referral. That is, a patient usually goes to the hospital to which his physician refers him. The evidence showed that the doctors who now prefer Portland Adventist Hospital will continue their preference after the move. A second factor in choice of hospital was shown to be religious preference; for various reasons some persons of the Seventh Day Adventist faith prefer to go to Portland Adventist Hospital. The evidence as to geographic considerations shows that this is a relatively insignificant factor in identifying the people who will use Portland Adventist Hospital at its new site. Based on this evidence the hearings officer concluded that the "defined population" at the relocated Portland Adventist Hospital facilities would be essentially the same as

that utilizing Portland Adventist Hospital at its present location.

Petitioner urges, without reference to the record, that geographic area is the primary consideration in determining the defined population. One can imagine a case where geographic considerations might be an important determinant, but this is not that case. The evidence in this case establishes that the defined population, i.e., those who use the present Portland Adventist Hospital and may reasonably be expected to use the relocated facilities of Portland Adventist Hospital, is primarily a function of physician referral. We conclude that CHPA correctly determined the "defined population" in this case.

■ The second assignment of error contends that there was no substantial evidence to support the order granting the Certificate of Need. Petitioner points to no specific finding of fact that is not supported by the evidence. A review of the transcripts and exhibits leads us to the conclusion that there is substantial evidence to support the order in all respects. *Bay v. State Board of Education,* 233 Or 601, 378 P2d 558, 96 ALR2d 529 (1963); *Miesen v. Dept. of Commerce,* 3 Or App 251, 473 P2d 691 (1970).

Affirmed.